IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CIENTHIA MOORE** | : | **CIVIL ACTION** |
| **IND. AND AS P/N/G OF MINOR PLAINTIFF,** | : | |
| **RUSSELL ROUNDTREE and** | : | |
| **RUSSELL ROUNDTREE** | : | |
| **A MINOR BY P/N/G CIENTHIA MOORE** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MARVIN WEISBERG,** | : | |
| **JACQUELINE HALTIE, and** | : | |
| **THE SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA** | : | **NO. 05-1790** |

**MEMORANDUM AND ORDER**

NORMA L. SHAPIRO, S.J.                                                                                December 10, 2007

      Plaintiff Cienthia Moore brought this action under 42 U.S.C. § 1983 on behalf of herself and as parent and natural guardian of Russell Roundtree ("Russell"). She alleges that defendants failed to protect her kindergarten-aged son from assault by three other kindergarten students on a bus ride home from school on March 12, 2003. Moore contends that defendants' nonfeasance resulted in physical and emotional harm to her son in violation of his constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. This court has federal question jurisdiction. 28 U.S.C. § 1331.

      Following discovery, defendants filed a motion for summary judgment. While the events of March 12, 2003 are troubling, they do not rise to the level of a constitutional violation; the court will grant defendants' motion for summary judgment.

1

A.      **Factual Background and Procedural History**

In the school year of 2002/2003, Russell attended Morton Elementary School in southwest Philadelphia.  He lived in Bartram Village, about a mile from Morton Elementary.  The school district provided bus service between Bartram Village and Morton on a standard, sixty-seat school bus which made a special kindergarten-only run each morning and afternoon.  The trip took between five and ten minutes.  Because only thirty or so kindergarten students rode the bus, approximately half of the seats on the bus were empty.

During that school year, Russell's bus driver made two specific seating assignments.  The first was for a student that often caused trouble.  K.R was instructed to sit in the very last seat in the bus, away from the other students.  The second assignment was for Russell, who, at the request of his mother, was placed in the very first seat on the bus, directly behind the bus driver.  Russell's assignment began a few weeks before March 12, 2003.

On March 12, 2003, while riding the school bus home, Russell Roundtree was allegedly attacked by three other kindergarten-aged students, including K.R.  The ride began with K.R. in his seat in the rear of the bus and Russell in the front.  Near the end of the trip, the bus driver noticed commotion in the back of the bus and brought the bus to a stop.  Upon reaching the back of the bus, she separated Russell from three other students, including K.R.  None of the students appeared injured to the driver, and she warned each of them that they would be subject to written discipline.  The driver returned K.R. and Russell to their assigned seats and completed the trip home.

Russell testified in his deposition that the March 12 incident was the first time he was physically attacked on the bus.  The bus driver also testified in her deposition that she had never

seen anyone hit Russell before that day.  Nonetheless, Ms. Moore contends that her son was continually being hit on the bus and that prior to his assault on March 12, 2003, Russell's

clothing, glasses, and money were stolen from him at various times.[1]

Moore alleges that she reported these prior incidents to defendants Weisberg and Haltie, principal and vice-principal of Russell's school, respectively. Weisberg and Haltie deny any prior knowledge of problems between Russell and his three assailants.

In Moore's complaint and subsequent motions she contends that defendants' failure to act resulted in injuries to her son. Moore alleges that defendants violated her son's constitutional due process rights by failing to alter or enforce policies dealing with violent student behavior. In so failing, Moore contends that they are subject to liability under the "state-created danger" doctrine.

Defendants filed a motion for summary judgment, arguing that Moore's claims under the Fourteenth Amendment fail as a matter of law. They contend that even drawing all logical inferences from plaintiff's allegations, the facts of this case are insufficient to satisfy the elements of a state-created danger claim.

**B.      Legal Standard**

Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court resolves all factual doubts and draws all reasonable inferences in favor of Ms. Moore, the nonmoving party. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005), cert. denied, 546 U.S. 1094 (2006).

---

[1] Defendants correctly point out that Ms. Moore's testimony that Russell was attacked in earlier incidents is hearsay. The court considers admissible evidence in making a determination of summary judgment. F.R.C.P. 56. However, because Ms. Moore would be free at trial to establish by indirect evidence that such earlier attacks had occurred, the court considers her allegations in deciding the motion for summary judgment.

**C.     Discussion**

Ms. Moore brought this civil rights action under 42 U.S.C. § 1983.  Section 1983 alone does not create any substantive rights, but rather creates a remedy for violations of the Constitution or federal law.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); Kneipp v. Tedder, 95 F.3d 1199, 1203 (3d Cir. 1996).  To state a claim under § 1983, Moore must demonstrate that defendants, acting under color of state law, deprived her son of a right secured by the Constitution or the laws of the United States.  Kneipp at 1203.

The act of violence allegedly visited upon Ms. Moore's son was perpetrated not by the state but private actors.  The threshold issue in this suit is whether the Fourteenth Amendment's Due Process Clause imposes an affirmative duty on a state to protect its citizens from private acts of violence.

In DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189 (1989), plaintiffs Joshua DeShaney and his mother sued the Winnebago County Department of Social Services ("DSS") after it received repeated complaints that Joshua was subjected to frequent beatings by his father.  Although the Department took various steps to protect Joshua,[2] they did not remove him from his father's custody.  Id. at 192.  The boy's father later beat him so severely that Joshua suffered severe and permanent brain damage.  Joshua and his mother sued.  They contended that

---

[2] After one beating sent Joshua to the hospital, DSS obtained a temporary custody order, placing Joshua in the care of the hospital. A "Child Protection Team" comprised of a psychologist, a police detective, the county's lawyer, several DSS caseworkers, and various hospital workers decided there was insufficient evidence to retain custody of Joshua.  The team recommended enrolling him in a preschool program, providing Joshua's father with counseling, and encouraging the father's girlfriend to move into the home.  Joshua's father entered into a voluntary agreement in which he promised to cooperate in accomplishing those goals and Joshua was returned to his custody.

the Department of Social Services violated Joshua's substantive due process rights under the Fourteenth Amendment by failing to intervene to protect Joshua against his father.  Id. at 193.

The Court, rejecting their claim, held that

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

DeShaney, 489 U.S. at 195.  The Court went on to write that as a "general matter . . . we conclude that a State's failure to protect and individual against private violence simply does not constitute a violation of the Due Process Clause."  Id. at 197.

### 1. Special Relationship

DeShaney did recognize an exception to this general principle.  Where a duty arises out of a "special relationship" created or assumed by the State with regard to a certain individual, the State acquires an affirmative duty to protect that individual from harm.  Id. at 197.  The DeShaney court held the "special relationship" doctrine applied only when the state has taken a person into custody and held him against his will:

> The affirmative duty arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.  In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the deprivation of liberty triggering the protections of the Due Process Clause, not its failure to act to protect his liberty

interests against harms inflicted by other means.

DeShaney, 489 U.S. at 200 (internal citations and quotation marks omitted). The Court held that the facts of Joshua DeShaney's case did not support a constitutional violation.

The Third Circuit, following DeShaney, held in D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir. 1992), that an assault on a female student at a public school did not rise to the level of a constitutional violation despite school officials' knowledge of continuing assaults. In D.R., plaintiffs alleged that during school hours and on school premises, male students consistently verbally, physically, and sexually assaulted female students. The complaint further alleged that the school defendants had knowledge of the abuse and maintained a policy of laxity toward the conduct.

In affirming the district court's grant of a motion to dismiss, the Third Circuit considered that DeShaney left open the possibility that persons other than the incarcerated and institutionalized who are subject to "other similar restraint[s] of personal liberty" might be owed a duty under the Due Process Clause. D.R., 972 F.2d at 1370. The court recognized that school attendance in Pennsylvania is compulsory by statute, but found the analogy between school children and compulsorily detained individuals a weak one because parents, not the state, remain a child's primary care givers. Because both school children and parents retain "substantial freedom to act," no special relationship arises as a result of the plaintiffs attending public school. D.R., 972 F.2d at 1372.

DeShaney and D.R. preclude plaintiffs' action under the special relationship theory. As in D.R., plaintiffs claim that a private harm in the public school setting constitutes a violation of the Due Process Clause. However, whether the school officials had knowledge of the incidents

or not, D.R. states plainly that no special relationship arises in the public school setting so that a private harm does not give rise to a constitutional violation. Plaintiffs' claims under the special relationship exception fail.

### 2. State-Created Danger

Plaintiffs contend the state created danger exception to DeShaney justifies denial of summary judgment. DeShaney acknowledged that while there ordinarily is no affirmative duty to protect a person not in state custody, there may be liability if state authority is employed to place him in a position more vulnerable to injury than he would have been absent state intervention. Scheiber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003).

In Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996), a husband and wife were returning on foot late on a very cold night; Mrs. Kneipp was visibly intoxicated. When the couple was almost home, the police stopped them for causing a disturbance on the highway. The police questioned them separately; at that point Mrs. Kneipp, an alcoholic, was so drunk that she was unable to stand. They allowed Mr. Kneipp to return home to relieve a babysitter; he testified that because his wife was drunk he presumed the police would either arrest her or drive her home, but the police sent Mrs. Kneipp home alone. She did not reach the apartment; found unconscious at the bottom of a nearby embankment later that night, her exposure caused permanent brain damage. Kneipp, 95 F.3d at 1201-1203.

Mrs. Kneipp's legal guardians sued. They contended that by voluntarily assuming responsibility for her protection when they allowed Mr. Kneipp to leave, the officers affirmatively created a danger that Mrs. Kneipp would be injured when they abandoned her.

The Kneipp court applied four factors, first proposed in Mark v. Borough of Hatboro, 51

F.3d 1137 (3d Cir. 1995), in determining whether there is liability for a state created danger:

    (1)    the harm ultimately caused was foreseeable and fairly direct;
    (2)    the state actor acted in willful disregard for the safety of the plaintiff;
    (3)    there existed some relationship between the state and the plaintiff; and
    (4)    the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

Kneipp, 95 F.3d at 1208 (citing Mark, 51 F.3d at 1152).

The Third Circuit confronted the state-created danger theory again in Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997). In Morse, a teacher in a day-care center, operating out of space provided by the Lower Merion School District, was killed by a deranged woman who entered the school through an unlocked rear door. Contractors had kept the entrance open prior to the shooting in contravention of a written school policy to keep the doors locked at all times. The complaint alleged that the school district and day care employees placed the victim in foreseeable danger by opening the door for contractors on a daily basis.

The court analyzed the case under the factors set out in Kneipp, supra. Morse interpreted the fourth of the state-created danger factors to depend not on "whether the act was more appropriately characterized as an act or an omission" but "whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable." Morse, 132 F.3d at 915. The Court of Appeals, finding no Due Process violation, affirmed the district court's grant of a motion to dismiss because it was "neither an act nor an omission of the state actor that directly placed the victim in harm's way." Id.

The Third Circuit applied the Kneipp factors again in Bright v. Westmoreland County, 443 F.3d 276 (3d Cir. 2006); defendant Charles Koschalk had plead guilty to corrupting the morals of a twelve-year-old girl and was to have no contact with her. The girl's sister telephoned

the police to inform them that Koschalk continued to have contact with her sister and to ask for his arrest.  The police assured her that immediate action would be taken.  Before his probation revocation hearing was scheduled, Koschalk shot and killed the sister; her estate brought the action against county and government officials.

The district court and the Third Circuit considered only the fourth element of a state-created danger claim.  The <u>Bright</u> court stressed that

> liability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.  **It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause**.  While we have acknowledged that the line between action and inaction may not always be clear, we have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised.

<u>Bright</u>, 443 F.3d at 276 (3d Cir. 2006) (citing <u>D.R.</u>, supra, 972 F.2d at 1374) (internal quotation marks omitted) (emphasis added).  The court concluded that the state could not "create danger" by failing to seek someone's detention or not promptly securing revocation of probation.  Even if the police had knowledge that Koschalk posed a danger to the decedent, no affirmative duty to protect arose.  <u>Id.</u> at 284 (citing <u>DeShaney</u>, supra, 489 U.S. at 200) (internal quotation marks omitted).

In <u>Kaucher v. County of Bucks</u>, 455 F.3d 418 (3d Cir. 2006), the Third Circuit synthesized the state-created danger holdings in <u>Bright</u> and <u>Morse</u>:

> [I]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.  But a specific and deliberate exercise of state authority, while necessary to satisfy the fourth element of the test, is not sufficient. There must be a direct causal relationship between the affirmative act of the state and plaintiff's

> harm. Only then will the affirmative act render the plaintiff more
> vulnerable to danger than had the state not acted at all. . . .
> Accordingly, the fourth element is satisfied where the state's action
> was the "but for cause" of the danger faced by the plaintiff.

Kaucher, 455 F.3d at 432 (internal citations and quotation marks omitted).

In the present case, Ms. Moore's claim must fail for the same reasons that barred claims in Bright and Morse; the fourth prong of the state-created danger theory is dispositive.  In order to prevail on her claim at trial, Ms. Moore would have to show: (1) that her son's injury occurred as a result of an affirmative misuse of state authority; and (2) that the state's action was the "but for" cause of her son's injuries.  The facts do not bear out such conclusions.

Plaintiffs contend the affirmative acts which subject defendants to liability were the school district's: (1) concealment of evidence of violence; (2) tolerant behavior toward violent students; and (3) failure to alter or enforce policies for the handling of violent episodes.  None of these acts constitute an affirmative misuse of state authority and each is remote from the actual harm suffered by Russell.

Directly analogous to the Third Circuit's holding in Bright, the school district here cannot "create danger" for Russell by failing to exercise its authority in what plaintiffs consider a timely fashion; even if the school district had knowledge that Russell's bus ride posed a danger to his physical safety, no affirmative duty to protect arose.  Any nonfeasance on the part of the school officials did not rise to the level of the inaction of the police in Bright and nor to the behavior of school officials in D.R.,[3] both cases in which the Third Circuit found no violation of the Due

---

[3] Although the Third Circuit did analyze D.R. under the state-created danger theory (finding no violation of the Due Process Clause), D.R. preceded the current test, articulated in Mark and Kneipp, supra, for analyzing a state-created danger claim.

Process Clause.

Even if these omissions could be characterized as affirmative misuses of state power, as opposed to failures to use to such power, not one of them amounts to a sufficiently direct, "but for" cause of Russell's injuries; each was far too remote from the actual harm. Plaintiffs can prove no set of facts demonstrating that defendants placed Russell in harm's way.

Defendant's motion for summary judgment will be **GRANTED**.